Lange v. The State.

No. 11,589.

## LANGE v. THE STATE.

CRIMINAL LAW.—*Notary Public.*—*Seal need not Contain Name of County.*— *Attestation of Affidavit.*—The seal of a notary public attesting an affidavit made before him need not contain the name of the county where the notary resides, or for which he was appointed.

SAME.—*Pointing Firearm.*—*Act of 1883.*—The act of March 5th, 1883, Acts 1883, p. 107, " concerning the use of firearms," makes criminal the pointing of a gun or other firearm at another purposely, whether it be done with wicked intent or in mere foolishness.

SAME.—*Pointing Gun at One Within his Dwelling.*—One who angrily seeks another, who is sheltered in his dwelling, and purposely points a gun at the dwelling-house door, daring him to come out, and threatening to shoot him, is amenable under such statute.

From the Pulaski Circuit Court.

*G. Burson, R. L. Mattingly* and *H. Burns,* for appellant.

*F. T. Hord,* Attorney General, *W. A. Foster,* Prosecuting Attorney, and *W. B. Hord,* for the State.

ELLIOTT, J.—The jurat to the affidavit on which the information is founded is thus signed : " B. S. B. Stamats, Notary Public," and is attested by the seal, containing these words: " Notary Public. Seal. Indiana." The contention of counsel is that the affidavit is not sufficient, because not attested by a proper notarial seal. We think the seal does indicate the official character of the officer, and that is all that the statute requires. The statute does not require that the seal shall state the name of the county in which the notary resides or for which he was appointed.

The purpose of the act of 1883 prohibiting one person from pointing a gun or pistol at another is to reach two classes of persons, those who in anger, or with malice, threateningly point such a weapon at another, and those who do so without anger or malice. One class is composed of the wicked, the other of the foolish ; in one case the act proceeds from wickedness, in the other from lack of sense.

The evidence in this case shows that the appellant was in-

fluenced by evil motives, and that what was done by him was done in a spirit of revenge. He had made threats against the life of the prosecuting witness, and was intent, as his declarations show, upon doing him serious violence. Influenced by the passions of anger and revenge, the appellant stationed himself within twelve steps of the door of the witness's house, laid his gun upon the fence, pointed it at the door of the house, and called upon the witness to come out, declaring that he wanted to " shoot him dead." The appellant's purpose was a deliberate one, for he remained with his gun pointed toward the door for more than fifteen minutes. In our opinion this evidence made a case within the statute, for its language is very broad and comprehensive. The words of the statute are : " It shall be unlawful for any person over the age of ten years, with or without malice, purposely to point or aim any pistol, gun, revolver, or other firearm, either loaded or empty, at or toward any other person." The word " toward " is one of very comprehensive signification, for it means " in the direction of." The gun of the appellant was certainly pointed in the direction of the prosecuting witness, and the case is, therefore, within the letter of the statute. We do not mean to hold that there must always be a conviction where the case is within the letter of the law ; on the contrary we affirm that in many cases there can be no conviction unless the offence is within both the spirit and the letter of the law. In this instance we are clear that the appellant violated both the letter and spirit of the statute; he sought the house of the prosecuting witness with intent to do him harm ; he evinced by his declaration this intent, and plainly indicated at whom he meant to and did point the gun ; there can, therefore, be no mistake as to the purpose of the appellant; nor can there be any doubt as to the person at or toward whom he pointed the weapon. It makes no difference that the person at whom the gun was directed was separated from the offender by a door or wall. A man in his own house has a right to invoke the aid of the law against one who, with evil intent, keeps watch over his door

with deadly weapon, and insults him with opprobrious epithets, and terrifies or annoys him with challenges to come out of the house. Whether a man is shielded by the doors and walls of his house, or by a window, a curtain. or a screen, or not shielded at all, is not material, for no one has a right to point at him a deadly weapon and menace him with death. The statute was intended to punish all who maliciously point such weapons at or toward another, and the fact that the threatened person is sheltered behind a barrier of thin plank, or even a wall of stone, does not relieve the man who does the wrongful act from responsibility. One purpose of the law was to repress the use of weapons to terrify or annoy others for the gratification of evil passions or the accomplishment of unlawful ends.

The view we have expressed disposes of all the questions ·in the case, for although they are presented in different forms, they are answered by our construction of the statute. Judgment affirmed.

Filed April 23, 1884.